UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| ADITYA R. SHARMA and ANSHU SHARMA,<br><br>Plaintiffs,<br><br>v.<br><br>CROSSCODE, INC.; ANKUR DESAI; ROBERT CLIFFORD; KEITH ARCHER; RAHUL GANDHI; and SOUMIK SARKAR,<br><br>Defendants. | Case No. 20-CV-0436 (PJS/TNL)<br><br><br><br>ORDER |

Nicholas G. Leonard, SAPIENTIA LAW GROUP, for plaintiffs.

Thomas R. Pack, MASLON LLP; David M. Friedman, Michelle Covington, and Micah Nash, OGLOZA FORTNEY + FRIEDMAN LLP, for defendants.

This matter arises out of a dispute over control of defendant Crosscode, Inc. ("Crosscode") and its intellectual property. Plaintiff Aditya Sharma ("Sharma") is Crosscode's former president, CEO, and chairman of the board. Sharma alleges that he was illegally removed from these positions and further claims that he is the sole owner of Panoptics, a software program that is "essentially the nucleus of Crosscode's business." Compl. ¶¶ 2, 4. According to Sharma, he licensed Panoptics to Crosscode under an August 2017 agreement. Crosscode denies that Sharma owns Panoptics and

contends that Sharma fabricated the license agreement after his removal from Crosscode.

In early January, Crosscode initiated a lawsuit against Sharma in the Northern District of California and, after the parties' attempt at mediation failed, obtained a temporary restraining order prohibiting Sharma from invoking any rights under the purported license agreement. While Crosscode's motion for a temporary restraining order was pending, Sharma and his wife (Anshu Sharma), who purports to be a major creditor of Crosscode, initiated this action.

This matter is before the Court on (1) the Court's order for the Sharmas to show cause why this case should not be transferred to the Northern District of California and (2) the Sharmas' motion for a temporary restraining order. For the reasons that follow, the Court (1) stays this case until further order of the Court and (2) denies the Sharmas' motion for a temporary restraining insofar as it seeks an order prohibiting defendants from harassing or intimidating the Sharmas or their family members.

I. BACKGROUND

On November 13, 2019, Crosscode terminated Sharma's employment as president and CEO and removed Sharma from its board of directors. Sharma Decl. Exs. D, E. The next day, Sharma sent an email to "all directors, attorneys and executives of Crosscode, Inc." claiming "serious securities fraud" and a "massive cover-up"

involving Crosscode and Liquid Venture Partners, LLC ("LVP"), an investment bank that had conducted a private placement on behalf of Crosscode. Clifford Decl. ¶¶ 2, 5-9, 12 & Ex. A. In the email, Sharma stated that he would begin litigation immediately and thereby "completely block" any investments in Crosscode. Clifford Decl. Ex. A at 2. Sharma also stated that he would immediately disseminate his accusations to Crosscode's investors and shareholders. *Id.* A day later, Sharma sent a similar email to "all employees, directors, attorneys and shareholders of Crosscode, Inc." Friedman Decl. Ex. F. In the second email, Sharma threatened to disclose his accusations to Crosscode's customers. *Id.* at 3.

On November 21, LVP sent Sharma a cease-and-desist letter and a document-preservation notice. Clifford Decl. Ex. C. The letter warned Sharma that if he did not comply with the bank's demands, the bank would initiate litigation; a proposed complaint was attached to the letter. *Id.* A month later, on December 22, Sharma sent an email to Crosscode employees, directors, attorneys, and shareholders withdrawing his accusations, saying that his allegations were based on an error. Friedman Decl. Ex. I.

At some point within the next few days, Crosscode became aware that Sharma was claiming to be the owner of Panoptics, Crosscode's software program (and main, if not only, product). On December 27, in response to a query from Crosscode's counsel,

Sharma's counsel produced a copy of a purported license agreement. Sharma Decl. Ex. G. The agreement states that Sharma is the sole inventor and owner of Panoptics and grants Crosscode a license to market, sell, and further develop the software. *Id.* Moreover, under the agreement, Sharma has both the right to suspend the license without notice and the right to terminate it altogether with 15 days' notice. *Id.* § 9. As a practical matter, then, the license agreement gives Sharma the ability to put Crosscode out of business without notice. The license agreement also requires Crosscode to immediately terminate any employee who has access to or is in possession of Panoptics without Sharma's written permission. *Id.* § 6(B). In the accompanying cover letter, Sharma's counsel stated that Sharma "is desirous of exercising the 'temporary restriction' provision of Section 9, and of invoking the Section 6(b) employment-termination provision as to Mr. Sarkar, using his own personal letterhead if need be." *Id.*

The next day (December 28), Sharma sent a letter to Crosscode claiming that he had served a separate notice on Crosscode triggering various provisions of the license agreement.[1] Sharma Decl. Ex. H. The letter states that Crosscode is in default and that Sharma "reserve[s] the right to initiate appropriate action." *Id.* at 2. At about the same time, Sharma emailed a Crosscode investor, stating, among other things, that he plans

---

[1]There does not appear to be a copy of such a notice in the record, and it appears that no such notice was ever sent. *See* Friedman Decl. Ex. K.

to destroy Crosscode and start a new company in its place and that "[t]he legal process is underway":

> I need to remind both of you (Max and Jerry) that our offer is valid till 10am tomorrow morning after which we will need to cease to negotiate with you. The legal process is underway and will not be paused or slowed. Crosscode has confirmed they are facing a financial crisis and cannot afford a litigation, unfortunately for them I do not have that constraint and I will go all out for the kill.
>
> Choice both of you need to make is if you want to get something out of Crosscode or will it be nothing. If the current crisis goes ahead, Crosscode will be worth nothing and the company will be shut down in no more than 3 months and I will start a new entity and a new legal structure where none of you will have any claim.

Friedman Decl. ¶ 11 & Ex. H. In response to Sharma's December 28 letter, Crosscode informed Sharma that it would bring a lawsuit against him on January 2 unless he withdrew his claims to Crosscode's intellectual property. Friedman Decl. Ex. K.

On January 3, Crosscode filed an action against Sharma in the Northern District of California alleging various commercial torts and seeking declaratory relief. *See Crosscode Inc. v. Sharma*, No. 3:20-CV-00104-VC (N.D. Cal. filed Jan. 3, 2020). Thereafter, the parties engaged in mediation, but they failed to resolve their dispute. Sharma Decl. ¶ 36. On January 29, Crosscode filed a motion for a temporary restraining order, and in support of its motion introduced a great deal of evidence that the purported license agreement is a fabrication. United States District Judge Vince Chhabria granted

Crosscode's motion on February 5 and scheduled a preliminary-injunction hearing for February 27. The California temporary restraining order prohibits Sharma from

> (i) invoking any and all provisions of the Purported License Agreement; (ii) using, in any way, Crosscode's software and intellectual property, including the "Authored Work" referenced in the Purported License Agreement, and (iii) engaging in any intentional spoliation efforts (that is, destruction or impairment of evidence).

*Crosscode Inc.*, No. 3:20-CV-00104-VC, ECF No. 21.

Meanwhile, on February 3, while Crosscode's motion for a temporary restraining order was pending, the Sharmas filed this action against Crosscode and members of its current board of directors. On February 7, after Judge Chhabria had already issued an order restraining Sharma from invoking the purported license agreement, the Sharmas filed a motion for a temporary restraining order in this action. The Sharmas seek (among other things) an order prohibiting defendants from using the intellectual property governed by the purported license agreement. ECF No. 4. The Court then ordered the Sharmas to show cause why this action should not be transferred to the Northern District of California. ECF No. 12.

## II. ANALYSIS

### A. First-Filed Rule

"The well-established rule is that in cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case."[2] *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993) (citations and quotation marks omitted). This first-filed rule applies "in the absence of compelling circumstances" and is neither "rigid" nor "mechanical," but rather is intended to serve the interests of justice. *Id.* (citations and quotation marks omitted). Certain "red flags" in the first-filed case may constitute compelling circumstances; for example, courts consider whether the plaintiff in the first-filed action was on notice that the defendant was contemplating litigation and whether the plaintiff is seeking declaratory relief. *Id.* at 1007.

The Sharmas argue that the first-filed rule should not apply because both of these red flags are present here, namely (1) Crosscode knew that Sharma intended to file a lawsuit and (2) Crosscode is seeking declaratory relief in the California action. Given the course of the parties' dealings, however, these factors do not constitute the compelling circumstances necessary to avoid the application of the first-filed rule.

---

[2]Sharma contends that he was never properly served in the California action and that jurisdiction has therefore not attached. Even assuming that the date of service is the relevant date for purposes of the first-filed rule, the California docket reflects that, at a minimum, Sharma was served no later than February 2, before the Sharmas filed this case. *See Crosscode Inc.*, No. 3:20-CV-00104-VC, ECF No. 22.

Sharma initially responded to his termination by broadcasting accusations of securities fraud against Crosscode and LVP, claiming that litigation would commence immediately, and threatening the destruction of Crosscode.  Sharma did not actually initiate litigation, however; instead, he backed down a month later.  Within days after withdrawing his accusations of securities fraud, Sharma pivoted to claiming that he owns Crosscode's core intellectual property, demanding that Crosscode immediately cease all sales, marketing, development, and advertising of that property, and telling investors that he was going to destroy the company.

Sharma's conduct put Crosscode in an untenable position.  His actions were not merely damaging to Crosscode; they posed an imminent threat to Crosscode's existence as a going concern.  At the same time, Crosscode had no particular reason to believe that Sharma actually intended to initiate litigation.  Sharma had already exhibited a pattern of threatening immediate litigation (and had even made misleading statements to an investor implying that litigation was already underway).  In light of Sharma's earlier empty threats, Sharma's vague reservation of the "right to initiate appropriate action" in his December 28 letter was insufficient to put Crosscode on notice that he intended to file a lawsuit at any time in the near future.  Instead, Crosscode had a good-faith basis to believe that Sharma's real goal was to inflict as much extrajudicial damage

on Crosscode as quickly as possible. This is precisely the type of circumstance for which declaratory relief exists.

Moreover, Crosscode's California complaint seeks far more than declaratory relief. Crosscode alleges numerous business and commercial torts against Sharma and seeks compensatory and punitive damages, restitution, injunctive relief, and attorney's fees. And Crosscode did not file suit without warning. Instead, Crosscode informed Sharma that if he did not withdraw his claim to the company's intellectual property, it would file a lawsuit against him on January 2. (Crosscode then filed the lawsuit on January 3.) The fact that Sharma did not file his own lawsuit until a month later—a lawsuit that, incidentally, also seeks declaratory relief—suggests that, consistent with his earlier conduct, Sharma had no immediate plans to file a lawsuit, but rather was seeking to prevail outside the courtroom by cutting Crosscode off from investors and drying up its customer base.

Sharma also argues that the first-filed rule should not apply because this action is not truly parallel to the California action. It is true that the Sharmas have brought certain claims that are not at issue in California. In particular, Anshu Sharma alleges that Crosscode is in default on loans that she made to Crosscode, and the Sharmas claim that Crosscode agents have been harassing them. Nevertheless, the two cases are in large part mirror images of each other.

Every one of Crosscode's seven claims in the California action is based on Crosscode's allegation that the purported license agreement is fabricated or otherwise unenforceable. Here in Minnesota, Sharma has made that same license agreement the centerpiece of his request for immediate injunctive relief. Significantly, he has done so in the face of a contrary ruling from Judge Chhabria, thereby creating an imminent risk of inconsistent rulings.

Likewise, the legality of Sharma's ouster is also at issue in the California action. Crosscode seeks to prohibit Sharma from continuing to hold himself out as the president and CEO of Crosscode. Sharma, for his part, argues that Crosscode cannot maintain the California action because he was illegally terminated and the company's current board is a sham.

Under the circumstances, therefore, the first-filed rule dictates that all of Sharma's claims that rely upon the purported license agreement should be transferred to the Northern District of California. (The Court is also likely to transfer all claims regarding the validity of Sharma's ouster.) In the California action, however, Sharma is arguing that the court lacks personal jurisdiction over him and that venue is improper.[3]

---

[3]Sharma also argues that this lawsuit is properly venued in Minnesota. Whether or not that is true, this lawsuit would also be properly venued in the Northern District of California, as all of the defendants are California residents and Crosscode's principal place of business is within that district. *See* 28 U.S.C. § 1391(b)(1). The fact that Minnesota may *also* be a proper venue for this lawsuit does not preclude transfer.

In order to avoid creating confusion with a potentially fruitless transfer, therefore, the Court will stay this case pending the outcome of Crosscode's motion for a preliminary injunction. If Judge Chhabria rejects Sharma's challenges to personal jurisdiction and venue in the Northern District of California, the Court will sever Sharma's claims regarding the license agreement (and probably also his claims challenging the legality of his ouster) and transfer those claims to the Northern District of California.

### B. *Temporary Restraining Order*

The Sharmas seek a temporary restraining order (1) prohibiting defendants from harassing or intimidating the Sharmas and their family members and (2) prohibiting defendants from using the intellectual property governed by the purported license agreement. As noted, in the event that Judge Chhabria finds that venue and personal jurisdiction are proper in the Northern District of California, the Court will transfer Sharma's claims under the purported license agreement to that district. For that reason, the Court will not address Sharma's attempt to enforce the purported license agreement unless and until Judge Chhabria either dismisses the California action or transfers that action to this District. As there appears to be no basis for transferring the Sharmas' claims regarding alleged harassment, however, the Court will address that aspect of the Sharmas' pending motion.

To obtain a temporary restraining order, the Sharmas must show, among other things, a likelihood of success on the merits of their claim. *See CDI Energy Servs., Inc. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009) ("the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied"); *Mid-America Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005) ("an injunction cannot issue if there is no chance of success on the merits").

The Court cannot assess the Sharmas' likelihood of success, however, because the Sharmas have not pleaded any sort of cognizable claim arising out of any alleged harassment or intimidation. The first two counts of their complaint—which are the only counts that mention any alleged harassment—are simply labeled "Temporary Restraining Order" and "Preliminary Injunction." But these are forms of relief, not causes of action. As the Sharmas have not pleaded any relevant claim for relief, the Court cannot assess whether they are likely to succeed.

Setting that aside, the Sharmas have not offered plausible evidence of any harassment of their family. The Sharmas assert that men from Crosscode have "knocked violently" on their front door and that, recently, a car driven by men sent from Crosscode was seen speeding away from their house. Anshu Sharma Aff. ¶ 7. But the Sharmas do not explain how they know that these men have anything to do with Crosscode. Moreover, the most likely explanation for men knocking on the Sharmas'

front door and driving near their house is that the men are trying to serve process on Sharma in connection with the California action. *See* Grandsinger Decl. [ECF No. 25] ¶¶ 4-6 (describing multiple efforts to serve Sharma at his Minnesota home). Loud knocking and potentially reckless driving by process servers do not provide a basis for a temporary restraining order.

To be sure, the Sharmas purport to offer evidence that *other* people have been threatened. The Sharmas also claim that a software developer who works for a Crosscode subcontractor in India was "savagely" beaten by men purporting to act on behalf of Crosscode and that these men also made threats against the Sharmas. Sharma Aff. ¶ 34. The main evidence that the Sharmas offer in support of these allegations is a series of (undated) text messages supposedly sent by the software developer. Sharma Aff. Ex. I. In those messages, the software developer purports to be "badly hurt and bleeding" after being beaten "non stop" for "over 20 minutes" and says that he is waiting for his wife to take him to the hospital. *Id.* He nevertheless manages to muster the energy to write a series of at least 15 sometimes lengthy text messages, many referring to the litigation between Crosscode and Sharma. *See, e.g., id.* at 3 ("Adi, I want you to know that I'll come to USA and testify all facts and everything soumik and crosscode lawyer is doing.").

There are at least two problems with these text messages: first, they are hearsay, and second, they appear to be clumsy fabrications.[4] Even in the unlikely event that Crosscode sent assailants to beat up an employee of a subcontractor in India, that assault happened thousands of miles away in another country and does not establish that the Sharmas themselves are presently in any danger. In short, the Sharmas are not likely to succeed, both because they have not actually articulated a cognizable legal claim and because the evidence they have offered is exceedingly shaky. The Sharma's motion for an order prohibiting harassment and intimidation is therefore denied.

ORDER

Based on the foregoing, and on all of the files and records herein, IT IS HEREBY ORDERED THAT:

---

[4]The Court notes that it came to this conclusion even before becoming aware of an affidavit submitted in the California action in which the software developer denies that he was ever physically assaulted or otherwise harmed by anyone affiliated with Crosscode and denies that the text messages on which the Sharmas rely were sent by him or at his direction. *See Crosscode Inc.*, No. 3:20-CV-00104-VC, ECF No. 33-1 at 37-38.

The Court also reminds the Sharmas' attorney that, under Rule 3.3(a)(3) of the Minnesota Rules of Professional Conduct, he is forbidden to offer or rely upon evidence that he knows is false. There is substantial reason to believe that some of the evidence introduced on the Sharmas' behalf may be fabricated, including the purported license agreement and the purported text messages from the software developer.

1. Plaintiffs' motion for a temporary restraining order [ECF No. 4] is DENIED insofar as it seeks an order prohibiting defendants from harassing or intimidating plaintiffs or their family members.

2. All other aspects of this case are STAYED pending further order of the Court.

Dated: February 19, 2020     s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge